**Gary Lynn MAYES, Plaintiff,**

v.

**Marvin E. GORDON, Defendant.**

**No. CIV-4-80-3.**

United States District Court,
E. D. Tennessee,
Winchester Division.

Dec. 23, 1980.

On Summary Judgment Re Amended
Complaint Jan. 8, 1981.

On Punitive Damages Summary Judgment
Jan. 28, 1981.

On Motion to Strike Witness
Aug. 11, 1981.

On Offer of Proof Oct. 5, 1981.

Charles D. Susano, Jr. and Doris Allen, Knoxville, Tenn., for plaintiff.

Marvin E. Gordon, Shelbyville, Tenn., and Cecil D. Branstetter, Nashville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

A magistrate of this district recommended that the motion herein of the defendant for a summary judgment[1] be denied. 28 U.S.C. § 636(b)(1)(B). The defendant served and filed a timely written objection to those portions of the recommendation "* * * concerning both jurisdictional and choice of law issues. * * *" 28 U.S.C. § 636(b)(1). The undersigned judge has considered *de novo* those portions of the magistrate's recommendation to which objection was made. *Idem.*

The defendant contends that the substantive law of Kentucky, and not that of Tennessee, governs this diversity action, and that, thereunder, punitive damages are

---

1. Technically speaking, a motion for summary judgment is not a proper method of challenging the Court's jurisdiction of the subject matter. *Hopkins v. Wasson*, D.C.Tenn. (1962), 227 F.Supp. 278, 279[1], affirmed on other grounds C.A. 6th (1964), 329 F.2d 67, certiorari denied (1964), 379 U.S. 854, 85 S.Ct. 102, 13 L.Ed.2d 57. It is clear, however, that the Court can treat that motion either as one made under Rule 12(b)(1), Federal Rules of Civil Procedure, *Gibson v. United States*, C.A.3d (1972), 457 F.2d 1391, 1392, n. 1, or as a "suggestion" under Rule 12(h)(3), Federal Rules of Civil Procedure, that the Court is without jurisdiction, *Hopkins v. Wasson, supra*, 227 F.Supp. at 279[2]. This Court is "* * * obligated to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction. * * *" *Mt. Healthy City Board of Ed. v. Doyle* (1977), 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471, 478[4].

not available to the plaintiff, thus rendering the amount in controversy herein less than the jurisdictional requisite of $10,000.[2] *See* 28 U.S.C. § 1332(a)(1).[3] The parties appear to agree that, if, under the applicable state law the plaintiff could not be awarded punitive damages, the amount actually in controversy herein does not meet the jurisdictional minimum.

The magistrate noted that the plaintiff had charged the defendant with gross negligence, and that punitive damages might be recovered where gross negligence is present. Citing *Johnson v. Husky Industries, Inc.*, C.A. 6th (1976), 536 F.2d 645, the magistrate appears to have assumed that the substantive law of Tennessee applies herein.[4]

■ In actions based on diversity of citizenship, federal courts are bound by the substantive law of the state wherever it is applicable, and the conflict of law rules of the forum in which the court sits. *Boatland, Inc. v. Brunswick Corp.*, C.A. 6th (1977), 558 F.2d 818, 821[1]. "* * * Here the forum state is Tennessee, and clearly the conflict of laws of that state applies. * * *" *Idem.*

"* * * To determine the substantive law to be applied [this Court] must ascertain the Tennessee conflicts rule and apply the same substantive law that would be applied by a Tennessee court under the same circumstances. The wrong sought to be remedied in the present case is one sounding in tort. * * *" *Telecommunications, E. S. & S. Co. v. Southern T. S. Co.*, C.A. 6th (1975), 518 F.2d 392, 394[3].

■ In tort actions, Tennessee adheres to the traditional conflicts rule, that the substantive law of the place of the wrong will apply, lex loci delicti. *Ibid.*, 518 F.2d at 394[4]; *Winters v. Maxey* (Tenn., 1972), 481 S.W. 755, 756[1]. Where the alleged wrongful conduct has taken place in more than one state, the place of the wrong is the state where the last event necessary to make the defendant liable for a tort takes place. *Koehler v. Cummings*, D.C.Tenn. (1974), 380 F.Supp. 1294, 1305[13], citing and quoting from Restatement of the Law, Conflicts § 377.

■ The tort which the plaintiff contends the defendant committed, and for which he seeks recovery herein, is that of negligence. Specifically, the plaintiff "* * * avers that the [d]efendant carelessly and negligently failed to prepare and file a brief on his behalf in the Kentucky Supreme Court as required by the statutes of the State of Kentucky and the rules of the Kentucky Supreme Court * * *" and, that, as a proximate result of such negligence, that court reversed a judgment in his favor for certain workers' compensation benefits. Although a part of the negligence asserted against the defendant, the failure to prepare a brief, may well have taken place in Tennessee, the last event necessary to make the defendant liable for his alleged negligence must have taken place in Kentucky where the brief was required to have been filed. Had the defendant not failed to have filed the brief with the Kentucky Supreme

---

2. "* * * It is clear that punitive as well as compensatory damages claimed by [the] plaintiff are to be considered in the determination of whether the requisite jurisdictional amount is actually in controversy. * * *" *Wood v. Stark Tri-County Building Trades Council*, C.A. 6th (1973), 473 F.2d 272, 274[2]. If under the applicable state law, punitive damages could not be recovered, and if the amount of compensatory damages claimed does not exceed the jurisdictional minimum, then the court lacks jurisdiction of the subject matter. *Vance v. Vandercook Company* (1898), 170 U.S. 468, 481, 18 S.Ct. 645, 650, 42 L.Ed. 1111, 1116.

3. "* * * The district courts shall have original jurisdiction of all civil actions where the matter

in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between * * * citizens of different states * *." 28 U.S.C. § 1332(a)(1).

4. "* * * Under Tennessee law punitive damages may only be awarded in cases involving fraud, malice, gross negligence or oppression, where a wrongful act is done with a bad motive or so recklessly as to imply a disregard for social obligations, or where there is such willful misconduct or entire want of care as to raise a presumption of conscious indifference to consequences. * * *" *Johnson v. Husky Industries, Inc., supra*, 536 F.2d at 650[9], citing *Inland Container Corp. v. March* (Tenn., 1975), 529 S.W.2d 43, 45.

Court, an omission which necessarily must have occurred in Kentucky, the plaintiff would not have suffered any injury and the defendant could not be held liable. Thus, under the Tennessee conflict-of-laws rule, this Court must look to the substantive law of Kentucky.[5]

Under the substantive law of Kentucky punitive damages "* * * are given only on account of the wanton, reckless, malicious or offensive character of the acts complained of. * * *" *Signer v. First National Bank & Trust Co. of Covington, Ky.*, C.A. 6th (1972), 455 F.2d 382, 386[5], citing *Harrod v. Fraley, Kentucky* (1956), 289 S.W.2d 203 and *Ashland Dry Goods Company v. Wages* (1946), 302 Ky. 577, 195 S.W.2d 312. "* * * Furthermore, punitive damages are not allowable for negligence unless the action is deliberate, intentional or wanton and malicious in nature. * * *" *Louisville Bear Safety v. South Cent. Bell Tel.*, C.A.Ky. (1978), 571 S.W.2d 438, 439[2].

There is no allegation in the complaint herein that the negligence of the defendant was wanton, reckless, deliberate, intentional or malicious; nevertheless, the plaintiff asserts in his brief that he "* * * has alleged that this defendant's conduct was wanton and reckless * * *." There simply are no such allegations herein; instead, the complaint appears to seek an award of punitive damages solely on the averment that the defendant "* * * was guilty of gross negligence in the premises * * *." But, as the plaintiff appears to recognize, Kentucky law does not permit the recovery of punitive damages for gross negligence.

This Court is of the opinion that the allegations of the complaint herein are insufficient to invoke this Court's jurisdiction of the subject matter under the provisions of 28 U.S.C. § 1332(a)(1). However, defective allegations of jurisdiction may be amended upon terms. 28 U.S.C. § 1653;

*Clark v. National Travelers Life Insurance Co.*, C.A. 6th (1975), 518 F.2d 1167, 1169[4]. It may be that the plaintiff genuinely thought he had alleged that the negligence of the defendant was wanton or reckless. Although he has not sought to amend his complaint so as to make such allegations, *see Clark v. National Travelers Life Insurance Co., supra*, the plaintiff ought to be given such an opportunity. Accordingly, the plaintiff hereby is ALLOWED 10 days herefrom in which to attempt to amend his complaint herein so as to correct his defective allegations of jurisdiction. 28 U.S.C. § 1653. The recommendation of the magistrate is held under advisement.

## MEMORANDUM OPINION AND ORDER

### On Summary Judgment Re Amended Complaint

The plaintiff amended his complaint herein so as to allege that the conduct of the defendant was intentional, deliberate, reckless, wanton and malicious. *See* memorandum opinion herein of December 23, 1980. These allegations seem sufficient to support the claim of the plaintiff, under the law of Kentucky, for punitive damages.

It does not appear that the plaintiff's claim for such exemplary damages was made in bad faith, and it has not been made to appear to a legal certainty that the claim herein is really for less than the jurisdictional amount. *Mt. Healthy City Bd. of Ed. v. Doyle* (1977), 429 U.S. 274, 276, 97 S.Ct. 568, 571, 50 L.Ed.2d 471, 477[2]. That the plaintiff might not recover an amount equal to the jurisdictional minimum would not demonstrate his bad faith nor oust the Court's jurisdiction. *Idem.* In that event appropriate sanctions would be available. *See* 28 U.S.C. § 1332(b).

Accordingly, the recommendation of the magistrate herein of October 20, 1980 hereby is ACCEPTED, 28 U.S.C. § 636(b)(1),

---

5. At this time the Court expresses no opinion as to whether the Tennessee or Kentucky statute of limitations would be applicable herein. It would appear, however, that the magistrate correctly determined that the Tennessee period of limitations is applicable. *See* 51 Am.Jr.2d 645, Limitation of Actions § 66 and *Sigler v. Youngblood Truck Lines*, D.C.Tenn. (1961), 149 F.Supp. 61, 65[9].

and the motion of the defendant for a summary judgment, Rule 56(b), Federal Rules of Civil Procedure, hereby is

DENIED. Furthermore, the Court hereby DECLINES to dismiss this action for lack of its jurisdiction of the subject-matter. Rules 12(b)(1), 12(h)(3), Federal Rules of Civil Procedure.

## MEMORANDUM OPINION AND ORDER
### On Punitive Damages Summary Judgment

■ To be entitled to summary judgment, the party seeking it must show conclusively that there exists for trial no genuine issue as to any material fact, *Smith v. Hudson,* C.A. 6th (1979), 600 F.2d 60, 63[4], certiorari denied (1979), 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415, and that under the undisputed record he is entitled to judgment as a matter of law, *Lashlee v. Sumner,* C.A. 6th (1978), 570 F.2d 107, 111. Having failed to meet that heavy burden, the motion herein of the defendant for a partial summary judgment, as to the claim of the plaintiff for punitive damages, hereby is

DENIED.

■ Considered in the light most favorable to the plaintiff, *see Smith v. Hudson, supra,* the record herein demonstrates that the defendant was counsel for the plaintiff in the matter of an appeal pending in the Supreme Court of Kentucky; that notice was given to the defendant and his Kentucky cocounsel by the clerk of that court of the necessity of filing a brief with such Court; that, despite being so notified, the defendant failed to file, or cause to be filed, such a brief; that, as a proximate result of such failure to file a brief, the Kentucky Supreme Court reversed a judgment which had been rendered in favor of the plaintiff and directed that his claim for·workers' compensation benefits be dismissed; and that the defendant failed to advise the plaintiff of such reversal and dismissal.

Whether any negligence of the defendant in this regard arose to the level of being wanton, reckless, deliberate, intentional or malicious, as is alleged by the plaintiff, must be decided at trial, not on a motion for summary judgment. Questions of motive and intent are implicated, and these are not suited to disposition by summary judgment. *Ibid.,* 600 F.2d at 66[9]. A full inquiry into the facts surrounding the conduct of the defendant under the usual trial procedure is advisable for the purpose of clarifying the application of the rather confusing Kentucky law relating to punitive damages. Such renders summary judgment herein inappropriate. *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.,* C.A. 6th (1976), 541 F.2d 584, 588[6].

### On Motion To Strike Witness

■ On exception of the plaintiff to ¶s VI and VII of the pretrial order herein of July 15, 1981, there is hereby STRICKEN from the list of witnesses for the defendant appended thereto the words, a Kentucky lawyer. A witness is a *person* whose declaration under oath is to be received as evidence; it is insufficient notice by the defendant to his adversary of the identity, whereabouts, and nature of the testimony of a witness—to all which information an adversary is entitled at the pretrial conference—to list an unnamed witness merely by occupation. *See Roy W. O'Neal, Jr., Etc.,* plaintiff, *v. Southern Railway Company,* defendant, no. CIV–2–74–112, this District, memorandum opinion of April 16, 1975; *cf. Depew v. Hanover Ins. Co.,* D.C.Tenn. (1976), 76 F.R.D. 8, 8, n.

■ The plaintiff's exception regarding proposed "late" exhibits is rendered MOOT under the practice of this Court as to "late" exhibits; merely advising the Court at the pretrial conference of the probability of "late" exhibits does not excuse a litigant from following such practice strictly to validate pretrial any proposed exhibit.

### On Offer of Proof

■ The plaintiff's offer-of-proof herein concerns a continuation of his effort to get into the evidence a document which at no time had been admitted into evidence. The contents of such a document are not to come to the attention of the jury, *Wash-*

*burn v. State*, C.C.A.Tex. (1958), 167 Tex.Cr. 125, 318 S.W.2d 627, certiorari denied (1959), 359 U.S. 965, 79 S.Ct. 876, 3 L.Ed.2d 834 (relating to another form of unadmitted evidence left in the view of the jury), and to the Court is committed the responsibility to exercise reasonable control over the mode of interrogating witnesses and presenting evidence in a trial, Rule 611(a), Federal Rules of Evidence.

The claim of the plaintiff herein, basically, is that he sustained a monetary loss of workers' compensation benefits, earlier awarded him and affirmed on judicial review in a lower court of Kentucky, in consequence of the defendant's negligent failure to prepare, file, and serve a reply brief in the highest Court of Kentucky which was essential to a proper presentation of his cause on appeal. *Hill v. Mynatt*, Tenn.Ch. Appeal (1900), 59 S.W. 163, 166–167 (which dealt with a claim that a lawyer did not possess and exercise reasonable skill in representing his client). On cross-examination of the plaintiff, defense counsel extracted from the witness an admission that he had claimed also in a lawsuit in the Circuit Court of Bell County, Kentucky, that his loss was occasioned proximately by the negligence of a (since-suspended) Kentucky lawyer, cocounsel of the defendant-attorney herein.

Seeking to undo whatever harm this may have created in the plaintiff's testimony, plaintiff's counsel undertook on redirect examination of the plaintiff to bring the attention of the jury to a file-copy in his attorney's office of the complaint pending in the Kentucky court, requesting the witness to look-over the document preparatory to being asked a question concerning a portion of the contents of that document. The Court inquired the number of the exhibit from which the plaintiff was about to be asked to testify; as stated, it had *not* been exhibited as evidence.

The Court advised such counsel that the document could not be used as an exhibit unless it had been admitted as such in the action, although it was permissible for counsel to ask the plaintiff questions *concerning* the complaint. The "authority" cited to the Court by plaintiff's cocounsel was

that his adversary-attorney had asked a question "about" the complaint with a copy thereof "* * * in front of him when he asked the question." The Court reiterated that it was all-right for the complaint to be used in *that* way, but that it could not be utilized as an exhibit.

Counsel for the plaintiff resumed her impermissible tactic by asking the plaintiff if he recognized the document shown him as being his *complaint* in the Kentucky court. Once again, the Court admonished counsel that the document could not be used *that* way, although she *could* ask her client a question and, if the witness desired to refresh his memory by looking-at the document, he might do so. Counsel persisted in her improper tactic, asking the plaintiff if he knew whether the *complaint* states any *allegation* against the defendant herein with respect to negligence. The Court, slowly losing patience now, once again admonished counsel that she could ask her client whether he *claimed* in the Kentucky lawsuit that the defendant was negligent, and, if the witness wished to consult the document before answering to refresh his memory, he might do so.

Eventually, counsel for the plaintiff did ask an appropriate question and invited him to review the *complaint*. After an objection by defense counsel on the ground of immateriality, the Court and counsel engaged in bantering over what exact question(s) had been asked the plaintiff on cross-examination, and cocounsel for the plaintiff sought, and was granted, permission to make an offer-of-proof afterward, with the proper question's never having been answered by the plaintiff.

This was totally improper. "* * * Trial judges in court, like umpires at home plate, cannot always be right, but rulings they must make. Thus to correct trial errors of substance, there is an orderly appellate process recognized by the judiciary since the memory of man runneth not to the contrary. * * * But trial counsel cannot be permitted to * * * flout the rulings of the trial court regardless of how vehemently he [or she] may disagree with the ruling. * * *" *Com. of Pa. v. Local U. 542, Int. U. of Op. Eng.*, D.C.Pa. (1976), 73 F.R.D. 544, 546.

"* * * [T]here must be order [in a trial] * * * and respect for judicial rulings. * * Our system is built upon the assumption that these rulings will be respected, and that counsel will adhere to the limits set by the judge, resorting to the orderly process of appeal if counsel believes the rulings to be in error. Otherwise, the trial process disintegrates into anarchy and trial by ordeal. In the words of Chief Justice Burger, 'Ethics and deportment, manners, in the courtroom, where it is so visible, are not merely matters of protocol. Those are the lubricants which keep our adversary system from becoming a barroom brawl.' * * *" *Johnson v. Trueblood*, D.C.Pa. (1979), 476 F.Supp. 90, 93[4]. The Chief Justice had stated earlier in an opinion: "* * * [O]nce the court has ruled, counsel and others involved in the action must abide by the ruling * * *. * * * [C]ounsel should [not] engage the court in extended discussion once a ruling is made * * *." *Maness v. Meyers* (1975), 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574, 583[4].

There was a lack of adherence to those principles in counsel's handling of the situation which led to the offer-of-proof herein.